FILED

# United States District Court

DEC 14 2005

CLERK
U. S. DISTRICT COURT
MIDDLE DIST. OF ALA.

MIDDLE DISTRICT OF ALABAMA

**In the matter of the Search of**
(Name, address or brief description of person, property or premises to be searched)

**CJ's Music & More**
**127 West Reynolds Street**
**Ozark, Alabama**

## APPLICATION AND AFFIDAVIT FOR SEARCH WARRANT

**CASE NUMBER:** 1:05mj148-B

I John W. Barnes, Jr. being duly sworn depose and say:

I am an agent with U.S. Immigration and Customs Enforcement and have reason to believe

that ☐ on the person of or ☒ on the property or premises known as (name, description and/or location)

**CJ's Music & More**
**127 West Reynolds Street**
**Ozark, Alabama**

in the Middle District of Alabama
there is now concealed a certain person or property, namely (describe the person or property to be seized)

**See Attachment A**

which is (state one or more bases for search set forth under Rule 41(b) of the Federal Rules of Criminal Procedure)
**property that constitutes evidence of the commission of a criminal offense,**

concerning a violation of Title 18 United States Code, Section(s) 2318 & 2320

The facts to support the issuance of a Search Warrant are as follows: **See Attached Affidavit**

Continued on the attached sheet and made a part hereof: ☒ Yes ☐ No

Signature of Affiant

Sworn to before me and subscribed in my presence,

December 12, 2005
Date

at Montgomery, Alabama
City and State

DELORES R. BOYD
United States Magistrate Judge
Name & Title of Judicial Officer

Signature of Judicial Officer

# AFFIDAVIT

I, John W. Barnes, Jr. being duly sworn, depose and state:

I am a Senior Special Agent with the Department of Homeland Security, United States Immigration and Customs Enforcement (ICE), presently assigned to the Office of the Resident Agent in Charge, Mobile, Alabama (RAC/Mobile). I have been employed as an ICE Special Agent for approximately 18 ½ years. As part of my daily duties as an ICE agent, I investigate criminal violations relating to violations of 18 U.S.C. §§ 545, 18 U.S.C. §§ 2318, 18 U.S.C. §§ 2320 and empowered to enforce all federal laws.

During my tenure as a Senior Special Agent, I have conducted and participated in numerous investigations of criminal activity, including, but not limited to, the investigation of narcotics smuggling, illegal exports, fraud, money laundering and counterfeit goods and services violations. During the investigation of these cases, I have executed and participated in the execution of numerous search warrants, and seized evidence of violations of United States law.

I have received training and experience in the investigation of the trafficking and/or manufacturing of counterfeit goods and services. During my tenure with ICE, I have been involved in seizures, controlled deliveries, investigations, and arrest relating to the illegal importation, possession, manufacturing and distribution of counterfeit goods. Through this experience, I have become familiar with methods utilized by individuals involved in not only the trafficking of counterfeit goods, but also their manufacturing and/or illegal reproduction.

From my training and experience, I know that computers, computer technology and audio systems including CD burners are commonly used to made illegal copies of music CD's. Based on my experience, I have found that it is common practice for individuals involved in the sale of counterfeit goods, such as counterfeit music CD's to have their reproduction equipment in close proximity to their merchandise. It is not practical to have their equipment located off site, especially when operating out of a store front location.

As part of a continuing investigation concerning counterfeit items, I have conducted undercover operations concerning the alleged illegal importation and/or trafficking in counterfeit goods in the Middle District of Alabama.

During November 2005, I received information from the Dale County Sheriff's Department that an individual was operating a store called CJ's Music & More in Ozark, Alabama and was selling alleged counterfeit music compact disc.

CJ's Music & More is located at 127 West Reynolds Street, Ozark, Alabama with the name and address clearly marked on the building. CJ's Music & More is a commercial business open to the general public with a large amount of merchandise on display in

plain view of the general public. There is also and office area behind the sales counter which is a private area and is not visible to the general public.

On November 17, 2005, Senior Special Agent John W. Barnes, Jr. and James H. Duff, an Investigative Consultant for the Recording Industry Association of America went to CJ'S Music & More, 127 West Reynolds Street, Ozark, Alabama. Upon entering the store we were greeted by a black male who has been identified as Robert "Red" Reynolds. The sales area contained a large amount, possibly in excess of one thousand CD's packaged for sale with most of these CD's displaying either no label other than a handwritten one or one of a poor quality. On many of the CD's there was no artwork and/or printing on the plastic cases. Also no inserts on the inside of the plastic case cover. Many of the CD's entire disc and plastic case were not inside a shrink-wrapped package. During the transaction from James H. Duff, Robert Reynolds walked back to his office area to check on the availability of certain CD's that Duff had requested.

James H. Duff purchased five music CD's while at CJ'S Music & More entitled, "Otis Redding's Greats Hits", "Percy Sledge 24 Greatest Hits", "Earth, Wind & Fire Illumination", "Sam Cooke's, Greatest Hits", and "B.B. King's Best of" from Robert Reynolds for a total amount of thirty five dollars. James H. Duff asked Robert Reynolds if he had any copies of DVD's and Reynolds replied, "they are too dangerous".

James H. Duff, presented the following evidence to his ability to inspect and identify alleged counterfeit items:

James H. Duff is contracted as an Investigative Consultant for the Recording Industry Association of America, Inc. (hereinafter "RIAA"), and within the organization by the Office of the Director of Anti-Piracy.

The Recording Industry Association of America (RIAA) is the trade group that represents the U. S. recording industry and is comprised of member companies that create, manufacture and/or distribute more than 90 percent of all legitimate sound recordings produced and sold in the United States. A full listing of RIAA member companies and labels can be found at www.riaa.com.

The RIAA Anti-Piracy Unit was formed to assist federal, state and local law enforcement agencies by providing expertise with respect to the sound recording industry, and to assist in uncovering counterfeiting, pirating, and bootlegging problems, which negatively impact the sound recording industry.

Prior to his employment with the RIAA, James H. Duff was employed as a Senior Special Agent with the U.S. Customs Service. James H. Duff retired in January 2005 with 30 years of sworn law enforcement experience.

As a law enforcement agent, he has investigated and initiated numerous arrests of individuals illegally manufacturing and/or distributing pirated goods/music. He has also facilitated and advised various law enforcement agencies on the issues of pirated music.

James H. Duff has been associated with intellectual property crime investigations (including music piracy investigations) since 1995. He has testified in Federal and State Grand Jury as well as several State and Federal courts.

James H. Duff has received training from the RIAA's Legal and Training Staff. This training included the review of pertinent Federal and State statutes; record, cassette and compact disc manufacturing processes; packaging and fabrication processes; and techniques used for the identification of unauthorized phonorecordings.

Sound recording piracy involves one or more forms of unauthorized duplication. Unauthorized duplication includes the duplication, distribution and/or sale of pre-recorded sounds without the permission of the owner of the master recording and/or copyright. The term "Piracy" is a general term describing all forms of unauthorized duplication which are divided into three specific categories – "Counterfeit", "Pirate" and "Bootleg" – further described as:

COUNTERFEIT: An unauthorized duplication not only of legitimately recorded sounds but also of the original artwork, trademark and packaging of the original product.

PIRATE: An unauthorized duplication of sounds contained in a legitimate recording, but without any attempt to duplicate the original artwork.

BOOTLEG: An unauthorized recording and/or duplication of a live performance or studio outtakes. Commonly, bootlegs are reproductions of live concerts, radio, television and cable broadcasts.

There are basic identifying characteristics of Counterfeit, Pirate and Bootleg phonorecords.

Counterfeit phonorecords frequently display the following characteristics:

The printing on the jackets, sleeves, inserts and labels may tend to be blurred, blocky or smudged particularly in the logo and in the smallest print.

The jackets, sleeves, inserts and labels tend to poorly reproduce the original colors in the artwork and photographs or do not reproduce the original colors at all.

The jackets, sleeves, insert and labels tend to be trimmed improperly, leaving outlines of black or white around the edges.

The inserts and labels tend to be affixed at improper angles, which indicate the absence of proper machinery to do the job correctly.

The same cartridge and/or CD-R will be used on all tapes/CD's. Different manufacturers make their own cartridges with distinct differences molded into the housings.

Most legitimate manufacturers make their own library boxes and/or jewel trays frequently with their own logo molded into the plastic. A counterfeiter will use the same box for all tapes and/or CD's.

Shrink-wrap folds should be different from company to company. A counterfeiter will use the same wrap method on all tapes and/or CD's, frequently with the overlapping fold, or a "baggie" type envelope.

Pirated phonorecords usually display the following characteristics:

Generally, none of the tapes and/or CD's will have a picture of the artist or group, whereas virtually all legitimate releases will have custom artwork featuring the artist or the group.

Many tapes and/or CD's that do have pictures do not have artwork that relates to the specific album. The picture may appear on other recordings of the artist.

Many of the graphics will list unfamiliar company names or no name at all, whereas legitimate companies will always display their name and logos prominently.

Many albums and/or CD's contain false statements regarding the payment of royalties or compliance with copyright laws whereas legitimate releases would have no need to so convince the consumer.

Bootleg phonorecords usually display the following characteristics:

Information on labels of tapes and/or CD's will almost always be typed usually listing only the name of the group and the date of the performance.

Tapes and/or CD's will generally never have the true name and address of the actual manufacturer of the bootleg.

Tapes and/or CD's will almost always be on a known manufacturer of blank tape or CD-R and will generally never list the performer's regular recording company.

Records will most likely have inserts, rubber stamped covers or no identifying data as outside graphics. More sophisticated bootlegs will be in printed colors but will be on labels with company names generally unknown outside of illegal sound recordings.

Incorrect grammar, spelling and punctuation are relatively common even on color packages.

Inside labels will very seldom match the album name and most likely will be blank.

Records, tapes and/or CD's will seldom have track separation between songs, making it difficult to determine the beginning of individual songs.

If a company name and address is given, the company is non-existent and cannot be located through common publications documenting the recording industry. Addresses will sometimes be for non-existent locations.

Records, tapes and/or CD's will often give the place and date of a performance.

On November 17, 2005, James H. Duff further examined the CDs he purchased from Robert Reynolds at CJ's Music & More, Ozark, Alabama. From Mr. Duff's examination he found these CDs to be counterfeit based on the following observations.

Four of these discs were made by Memorex. The labels are poor quality on the discs and there is no artwork or printing on the plastic cases. There are no inserts on the inside of the plastic case cover. The entire disc and plastic case were not inside a shrink-wrapped package.

The CDs examined were: Earth, Wind & Fire "Illumination", Percy Sledge "24 greatest hits" B.B. King "Best of", Otis Redding "Greatest Hits", Sam Cooke "Greatest Hits".

Based on the foregoing information, I believe that probable cause exists that counterfeit music CDs are stored and marketed for sale at CJ'S Music & More, 127 West Reynolds Street, Ozark, Alabama in violation of 18 U.S.C. § 2318 and 2320. Additionally, based on my training and experience, I believe that items used in the manufacturing, marking, packaging and selling of the counterfeit goods, including but not limited to computer hardware and software, Compact Disk (CD) burners, audio systems, including but not limited to CD players, as well as documents relating to the importation, purchase, possession, and sale of the above counterfeit goods are located at CJ'S Music & More, 127 West Reynolds Street, Ozark, Alabama.

John W. Barnes, Jr. Senior Special Agent
U.S. Immigration and Customs Enforcement

Sworn to before me and subscribed
in my presence this the 12th day of
December, 2005.

U.S. Magistrate Judge

**ATTACHMENT "A"**
**PROPERTY TO BE SEIZED**

1. All counterfeit music Compact Disks (CDs) along with any items used for storage and/or display of counterfeit goods.

2. Tapes, cassettes, cartridges, streaming tape, commercial software and hardware, computer disks, disk drives, monitors, computer printers, modems, tape drives, disk application programs, data disks, system disk operating systems, magnetic media floppy disks, CD-ROMs, CD-RWs, CD-Rs, CD Burners, hardware and software operating manuals, tape systems and hard drive and other computer related operation equipment, digital cameras, scanners, and any equipment that may be or are used to manufacture or distribute counterfeit goods.

3. Correspondence pertaining to the possession, receipt, manufacture or distribution of counterfeit goods.

4. Books, ledgers and records bearing on the production, reproduction, receipt, shipment, orders requests, trades, purchases or transactions of any kind involving counterfeit goods.

5. Address books, mailing lists, supplier lists, mailing address labels and any and all documents and records pertaining to the preparation, purchase and acquisition of names or lists of names to be used in connection with the purchase, sale, trade or transmission of any counterfeit goods.

6. Diaries, notebooks, notes and other records reflecting personal contact and other activities with individuals engaged in the possession, production or distribution of counterfeit goods.

7. Records evidencing occupancy or ownership of the listed business.

8. Records or other items which evidence ownership or use of computer equipment found at the listed business, including, but not limited to, sales receipts, bills, handwritten notes and handwritten notes in computer manuals.